FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 24, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

VICTORIA M.,[1]

                    Plaintiff,

        v.

FRANK BISIGNANO,
Commissioner of Social Security,

                    Defendant.

No.   2:25-cv-00291-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR FURTHER PROCEEDINGS**

Due to endometriosis, pelvic floor dysfunction, migraines, post-traumatic stress disorder (PTSD), major depressive disorder, and anxiety, Plaintiff Victoria M. claims that she is unable to work fulltime

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

DISPOSITIVE ORDER - 1

and applied for disability insurance benefits. She appeals the denial of benefits by the Administrative Law Judge (ALJ) on the grounds that the ALJ improperly analyzed the opinions of the treating medical source, Jessica Long, PsyD; the ALJ erred in imposing a residual functional capacity (RFC) because it did not account for Plaintiff's physical and mental limitations; and the ALJ failed to properly evaluate Plaintiff's mental impairments. As is explained below, the ALJ erred; contributing to this error was the ALJ's failure to recognize Plaintiff's lengthy participation in an intensive partial hospitalization program. This matter is remanded for further proceedings.

## I.    Background

In February 2022, Plaintiff filed an application for benefits under Title 2, claiming disability beginning February 26, 2021, based on the physical and mental impairments noted above.[2] Plaintiff's claim was denied at the initial and reconsideration levels.[3]

---

[2] AR 248-249, 289.

[3] AR 133-138, 140-143.

DISPOSITIVE ORDER - 2

After the agency denied Plaintiff benefits, ALJ Palachuk held a telephone hearing in July 2024, at which Plaintiff appeared with her representative.[4]  Plaintiff and a vocational expert testified.[5]  After the hearing, ALJ Palachuk issued a decision denying benefits.[6]

The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[7] As to medical opinions, the ALJ:

- Failed to make any finding as to the persuasiveness of state agency physicians Dorothy DeLong, MD, and Diane R., MD.

- Found the opinions of state agency psychologist Carol Mahoney, PhD, to be less persuasive.

- Failed to articulate a finding of persuasiveness for the opinions of state agency psychologist Kent R., PhD, but

---

[4] AR 46-84.

[5] *Id.*

[6] AR 19-38.  Per 20 C.F.R. § 404.1520(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[7] AR 27-29.

DISPOSITIVE ORDER - 3

implied that they were more persuasive than those of Dr. Mahoney.

- Found the opinions of treating source Jessica Long, PsyD, to be not persuasive.[8]

The ALJ also noted that she considered the third-party function report completed by Plaintiff's boyfriend but made no finding regarding persuasiveness.[9] As to the sequential disability analysis, the ALJ found:

- Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2023.

- Step one: Plaintiff had not engaged in substantial gainful activity from February 26, 2021, the alleged onset date, through June 30, 2023, her date last insured.

- Step two: Plaintiff had the following medically determinable severe impairments: episodic migraines, chronic pelvic pain, anxiety disorder, and major depressive disorder.

---

[8] AR 29.

[9] *Id.*

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations:

  Avoid more than moderate exposure to industrial noise, industrial vibration, respiratory irritants and unprotected heights. [Plaintiff] is able to understand, remember and carry out simple, routine tasks. [Plaintiff] is able to maintain concentration, persistence and pace for two-hour intervals between regularly scheduled breaks. [Plaintiff] should have no contact with the public and occasional interaction with coworkers.

- Step four: Plaintiff was unable to perform her past relevant work as a hostess, server, and receptionist.

- Step five: in the alternative, considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a church janitor  (DOT 389.667-010),

collator operator (DOT 206.685-010), and routing clerk (DOT 222.687-022).[10]

Plaintiff filed a timely request for review of the ALJ decision,[11] and the Appeals Council denied review on May 28, 2025.[12] On July 15, 2025,[13] and the Appeals Council issued an Order granting an extension.[14] Plaintiff timely requested review of the ALJ's decision by this Court pursuant to the extension granted by the Appeals Council.[15]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[16] and such error

---

[10] AR 24-31.

[11] AR 241.

[12] AR 6-11.

[13] AR 4-5.

[14] AR 1-3.

[15] ECF No. 1.

[16] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

DISPOSITIVE ORDER - 6

impacted the nondisability determination.[17] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[18]

---

[17] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. § 404.1520(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[18] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

DISPOSITIVE ORDER - 7

## III.   Analysis

Plaintiff seeks relief from the denial of disability on three grounds. She argues the ALJ erred when evaluating the medical opinion of her treating psychologist, in formulating an RFC that did not account for Plaintiff's physical and mental limitations, and in failing to properly evaluate Plaintiff's mental impairments.  As is explained below, the Court concludes that the ALJ erred consequentially in her evaluation of the medical opinion evidence and medical records regarding Plaintiff's mental impairments, and erred in failing to develop the record regarding Plaintiff's physical impairments.

**A.    Medical Opinions: Plaintiff establishes consequential error**

Plaintiff argues the ALJ erred in her evaluation of the medical opinions of Dr. Long.[19]  Specifically, Plaintiff argues that the ALJ erred

---

[19] An ALJ must consider and articulate how persuasive she found each medical opinion, including whether the medical opinion was consistent with and supported by the record. 20 C.F.R. § 404.1520c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

in failing to properly articulate any finding as to supportability or consistency.[20] The Commissioner counter-argues that the ALJ validly considered the supportability and consistency of the contested medical opinion.[21]

### 1.    Standard

The ALJ was required to consider and evaluate the persuasiveness of the medical opinions and prior administrative medical findings.[22] The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[23] Supportability and consistency are the most important factors,[24] and the ALJ must explain how she considered the supportability and consistency factors when reviewing

---

[20] ECF No. 14.

[21] ECF No. 17.

[22] 20 C.F.R. § 404.1520c(a), (b).

[23] *Id.* § 404.1520c(c)(1)–(5).

[24] *Id.* § 404.1520c(b)(2).

the medical opinions and support her explanation with substantial evidence.[25] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[26]

### 2.    Dr. Long's Opinions

On January 24, 2023, Dr. Long completed an 8-page form forwarded to her by Plaintiff's attorney.[27] Part of the form was in a check-box format with questions to be answered by checking a box, and part of the form contained blank lines for Dr. Long to write narrative

---

[25] *Id.* § 404.1520c(b)(2); *Woods*, 32 F.4th at 785 ("The agency must articulate . . . how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings.") (cleaned up).

[26] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court review is constrained to the reasons the ALJ gave).

[27] AR 2673-2682.

answers to questions posed.[28] Dr. Long provided long and detailed answers.[29]

Dr. Long wrote that she had seen Plaintiff once or twice weekly since August 12, 2019, through the date the form was completed in 2023.[30] Dr. Long wrote that Plaintiff was diagnosed with PTSD, panic disorder, major depressive disorder (moderate to severe, recurrent), adjustment disorder with mixed depression and anxiety due to physical illness, and also a rule out diagnosis of bipolar disorder.[31] She wrote that secondary diagnoses included migraines, endometriosis, positional orthostatic tachycardia syndrome, pelvic floor dysfunction, and adenomyosis.[32] Dr. Long stated that treatments had included surgery,

---

[28] *Id.*

[29] *Id.*

[30] AR 2674.

[31] *Id.*

[32] *Id.*

acupuncture, massage, psychiatric medication, individual counseling and a prior partial hospitalization.[33]

Dr. Long stated that Plaintiff had cooperated with treatment but that her debilitation remained pronounced; that her medications included lithium, cimetidine, Seroquel, gabapentin, diazepam, lorazepam, Mirena, albuterol and fluconazole; and that her medications caused dizziness, drowsiness, brain fog, mood dysregulation, and upset stomach.[34]

Dr. Long stated that during sessions she observed Plaintiff to be in pain, with depressive mood swings with crying, helplessness, brain fog and difficulty staying on topic, dissociation, fidgeting, and wincing, that panic attacks had resulted in her ending the session, and that her symptoms at times prevented her from attending her sessions on time.[35] Dr. Long opined that Plaintiff's prognosis was fair, that her medical and psychiatric conditions are complex, and that without

---

[33] *Id.*

[34] *Id.*

[35] AR 2675.

improvement in her medical conditions it will be difficult for her psychiatric conditions to improve until her physical conditions improve.[36]

Dr. Long opined that Plaintiff's symptoms lasted for 12 months or more, that she did not suspect exaggeration or malingering, that reduced IQ was not a factor, and that Plaintiff's psychiatric condition exacerbates her physical pain.[37] Dr. Long explained that Plaintiff's sexual assault trauma likely contributed to her abdominal pain, pelvic pain, and panic attacks.[38]

Dr. Long stated that Plaintiff's anxiety and PTSD had lasted for at least 2 years, despite treatment, with limited ability to adapt, and that she required a highly structured setting to diminish symptoms.[39] Dr. Long stated that Plaintiff's condition deteriorated while in school, that a partial hospitalization was needed to stabilize her after

---

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] AR 2676.

DISPOSITIVE ORDER - 13

deterioration, and that her deteriorations have resulted in her missing work or school.[40] Dr. Long noted that Plaintiff had to miss appointments or leave early due to exacerbations in symptoms.[41]

Dr. Long noted that Plaintiff's symptoms include the following: diminished interest in activities; appetite disturbance with weight loss; sleep disturbance; feeling of guilt and hopelessness; decreased energy; difficulty concentrating; thoughts of death; distractibility; pressured speech; repetitive behaviors; disorganized speech and thinking; easy fatigability; recurrent aggressive, impulsive outbursts; decreased need for sleep; memory impairment; psychomotor agitation during periods of feeling better; irritability; muscle tension; restlessness; disproportional fear and anxiety; involuntary, time-consuming preoccupation with intrusive, unwanted thoughts; panic attacks; exposure to threats or violence; disturbance in mood or behavior; detachment from social relationships; distrust and suspiciousness of others; excessive emotion and attention-seeking; ability or personal relationships; involuntary re-

---

[40] *Id.*

[41] *Id.*

DISPOSITIVE ORDER - 14

experiencing of a traumatic event; impaired perception; feelings of inadequacy; avoidance of external reminders of a traumatic event; exaggerated startle response; one or more somatic symptoms; impaired executive functioning; impaired social cognition; and impaired complex attention.[42]

Dr. Long opined that Plaintiff would have a moderate limitation in completing the following: remember work-like procedures; carry out simple, short instructions; make simple work-related decisions; ask simple questions or request assistance; and respond appropriately to routine changes in a work setting.[43] Dr. Long opined that Plaintiff would have a marked limitation in completing the following: maintain attention for 2-hour segment; maintain regular attendance and be punctual; sustain an ordinary routine without special supervision; work in proximity to others; complete a normal work week; perform at a consistent pace; accept instruction and respond appropriately to

---

[42] AR 2677-2678.

[43] AR 2679.

criticism; get along with co-workers; and deal with normal work stress.[44]

Dr. Long opined that Plaintiff would have a marked limitation in the following functional areas: understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting or managing oneself.[45] She opined that Plaintiff would be on task for less than 80% of the day and would likely miss work or be unable to complete an 8-hour work day on 4 or more days per month.[46] Dr. Long opined that the restrictions and limitations noted had existed since February of 2021.[47]

//

//

//

//

---

[44] *Id.*

[45] AR 2680.

[46] *Id.*

[47] AR 2681.

DISPOSITIVE ORDER - 16

### 3.    Relevant Medical Records

#### a.    *Recovery and Wellness Center of Eastern Washington*

On February 10, 2021, Plaintiff was admitted to a partial hospitalization program[48] at the Recovery and Wellness Center of Eastern Washington on the referral of her psychiatrist.[49] Plaintiff's PHQ-9 score was 20, and her GAD-7 score was 21, indicating anxiety and depressive symptoms severe enough to prevent her from performing ADL's or getting along with others.[50] Plaintiff attended

---

[48] Cleveland Clinic describes partial hospitalization programs as follows:

> Partial Hospitalization Programs are designed for individuals who require more support than traditional outpatient services but do not need fulltime hospitalization. These programs typically involve structured treatment sessions that include individual therapy, group therapy, and medication management. PHPs are beneficial for those transitioning from inpatient care or those experiencing severe mental health or addiction issues.

Partial Hospitalization Programs (PHP) | Cleveland, OH. www.clevelandclinic.org. (last viewed March 19, 2026.)

[49] AR 514.

[50] *Id.*

DISPOSITIVE ORDER - 17

group therapy twice that week, missing one day of therapy, and was noted to be prescribed Lithium, Adderall, and Deplin.[51]

Weekly symptom summaries indicated that Plaintiff attended the programs for 5 days per week, with three days of group therapy, and one day of individual therapy and medication management.[52] The Court notes that there are no treatment records or progress notes contained in the record, and that the administrative record contains only an abstract of the medical record and is missing the bulk of the treatment records. Distorted thinking was noted at the time of admission and improved in July of 2021.[53] On August 24, 2021, Lamictal was added to Plaintiff's regimen of medications.[54] On

---

[51] Deplin is a targeted nutritional supplement designed to increase the effectiveness of anti-depressant medication. www.deplin.com.  (last viewed March 19, 2026.)

[52] AR 484-515.

[53] AR 508-509, 514.

[54] AR 489.

DISPOSITIVE ORDER - 18

September 1, 2021, Plaintiff's dosage of Lithium was also adjusted.[55] On September 24, 2021, Plaintiff's dosage of Lamictal was increased.[56]

The summary for the week of October 7, 2021, Plaintiff's week of discharge, indicates that she was found not to be at risk of suicidal or self-harming behaviors.[57] Plaintiff reported that her sleep was adequate but not good with 5-7 hours of sleep a night, that she had poor appetite and low energy daily, that she had low energy half the days of the week, and that she continued to address trauma in individual counseling.[58]

b.    *Jessica Long, PsyD*

Plaintiff began treatment with Dr. Long on August 12, 2019, after being referred due to diagnosis of post-traumatic stress disorder on

---

[55] AR 495

[56] AR 487.

[57] AR 484.

[58] AR 484-485.

July 11, 2019.[59] At the time of intake, Plaintiff was a minor.[60] She had not been in counseling prior to this intake but had diagnoses for PTSD, anxiety, and a mood disorder.[61] She had been hospitalized twice in the past for suicide attempts.[62] Her medications included lithium, Lamictal, trazadone, and Rexulti.[63] Bipolar disorder was suspected but needed to be ruled out.[64] Plaintiff's insight was impaired and she was tearful.[65]

In April 2020, it was noted that Plaintiff's panic attacks were becoming more disabling, and she was somewhat emotionally distant in her session.[66] In September 2020, she was experiencing increased

---

[59] AR 2778, 2781, 2782.

[60] AR 2775.

[61] AR 2777.

[62] AR 2778.

[63] AR 2779.

[64] AR 2790.

[65] AR 2793.

[66] AR 2803.

anxiety and depression.[67] In January 2021, it was noted that panic symptoms were on-going and Plaintiff was overwhelmed with distorted thinking.[68] In March 2021, Plaintiff had panic attacks, irritability, a depressed mood, and physical pain but had no further suicidal thoughts since starting lithium.[69] In May 2021, Dr. Long noted a depressed and irritable mood, difficulty with executive functioning, and distorted thinking, but better motivation and productivity after being prescribed Adderall.[70] It was noted at a June 11, 2021 appointment that Plaintiff was tearful and depressed, had tangential thoughts, and was sad and anxious, but reported that her partial hospitalization program was going well.[71]  Throughout July of 2021, at appointments twice a week, Plaintiff presented as sad, tearful, and anxious and

---

[67] AR 2807.

[68] AR 2808.

[69] AR 289.

[70] AR 2810.

[71] AR 2813.

reported problems maintaining personal relationships.[72] In the first week of August 2021, it was noted that Plaintiff's lithium was decreased due to increased physical pain and Plaintiff became more angry and irritable, and continued to present with sad, tearful, anxious mood.[73] In September 2021, Plaintiff had made progress in her treatment and was exploring academic support services to help her with school, but was still positive for weight loss and still displaying sad, tearful, and anxious mood.[74] She reported being emotionally distant, and continued to experience panic attacks with irritable mood.[75] On October 19, 2021, Plaintiff continued to have irritable sad mood, but had decided to temporarily withdraw from community college in order to deal with her symptoms of feeling overwhelmed and in pain.[76]

---

[72] AR 2813-2817.

[73] AR 2818.

[74] AR 2821.

[75] AR 2822.

[76] AR 2823.

In November 2021, Plaintiff reported more energy and was not sad or tearful, but Dr. Long noted the possibility of a manic episode and need to increase the frequency of appointments due to adjustments in medication.[77] On December 4, 2021, Dr. Long noted that Plaintiff was again experiencing an increase in irritability, and was sad, tearful, and lethargic.[78]

### 4.   Analysis

The Court will address the ALJ's evaluation of Dr. Long's opinions, both as to Plaintiff's allegations that the ALJ failed to adequately articulate her analysis of the supportability and consistency factors, and the Court's conclusions regarding the need to develop the record.

#### a.   *The ALJ's consideration of Dr. Long's opinions*

The ALJ articulated the following reasoning as to her consideration of Dr. Long's opinions:

> Jessica Long, Psy.D., completed a mental residual functional capacity assessment and opined the claimant's

---

[77] AR 2825.

[78] AR 2828.

psychiatric condition exacerbated her pain and functioning (Exhibit 16F/3). She opined the claimant had extreme limitations in difficulties with concentrating, persisting or maintaining pace and marked limitations in understanding, remembering or applying information, interacting with others and adapting or managing herself (Exhibit 16F/8; 20F/1-3; 22F/14). Moreover, she found the claimant would be absent more than four days per month.  These opinions are not persuasive because the findings are not supported with sufficient explanation and is not consistent with the overall medical record showing limited mental health treatment and her release from outpatient therapy due to her ability to properly use independent coping skills.[79]

The ALJ must articulate her findings and cite to supporting evidence in a way that permits the Court to meaningfully review the ALJ's findings.[80]  Moreover, while an ALJ need not address every piece

---

[79] AR 29.

[80] *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the found conflict to permit the court to meaningfully review the ALJ's finding); *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may

DISPOSITIVE ORDER - 24

of evidence, an ALJ "may not ignore significant probative evidence that bears on the disability analysis."[81]

The ALJ's findings regarding Dr. Long's opinions are cursory. In her summary dismissal of Dr. Long's opinions on the grounds of supportability, the ALJ fails to acknowledge the lengthy and detailed narrative explanations provided by Dr. Long on the face of the form. Generally, the failure to cite evidence is not a sufficient indication that the ALJ failed to consider it.[82] Although an ALJ is not required to discuss every bit of evidence in the record, "it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and

afford the claimant meaningful review of the SSA's ultimate findings.").

[81] *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022).

[82] *Black*, 143 F.3d at 386 ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

DISPOSITIVE ORDER - 25

explore for all the relevant facts."[83] Here, the ALJ not only failed to address the detailed narrative portions of the opinion form itself, but she failed to mention any actual treatment note in Dr. Long's records that are inconsistent with her opinions. For this reason, the Court concludes that the ALJ failed to properly consider the supportability factor when evaluating Dr. Long's opinions.

Next, the Court looks to the ALJ's analysis of the consistency factor, and finds it also to be lacking. The ALJ explains in her analysis that the medical record shows a "limited mental health treatment" and that Dr. Long's opinions are inconsistent with Plaintiff's "release from outpatient therapy."[84]

The Court finds that the ALJ's conclusory statement that there is a limited treatment record is not supported by the record. The record establishes that during the relevant period, Plaintiff was seen by a

---

[83] *Garcia v. Comm'r of Social Sec.*, 768 F.3d 925, 930 (9th Cir. 2014) (cleaned up); *Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984).

[84] AR 29.

therapist once a week at a minimum and frequently seen more than once a week.[85] Additionally, she was seen monthly by a psychiatrist who prescribed medication.[86]

Most striking, is that the record reflects that in February 2021, the time at which Plaintiff alleges onset, her condition was not being managed despite being seen twice a week by her therapist and she was placed into a partial hospitalization program for 10 months.[87] While the administrative record contains only the summary reports from Plaintiff's partial hospitalization, those reports establish that Plaintiff was undergoing treatment 5 days a week.[88]  Additionally, the records establish that Plaintiff was released back to Dr. Long for care, and that her condition remained so severe that she was required to withdraw from school.[89]

---

[85] AR 2673-2681, 2775-2861, 2348-3369, 3370-3373.

[86] AR 2674.

[87] AR 484-518.

[88] *Id.*

[89] AR 484, 2823.

The ALJ's misunderstanding as to the context of Plaintiff's release from treatment was consequential. While the ALJ is correct that Plaintiff was released by Recovery and Wellness Center of Eastern Washington in October 2021, she was not released from "outpatient treatment" but rather was released from an intensive partial hospitalization program, back for weekly outpatient treatment with Dr. Long.  Context is crucial as "treatment records must be viewed in light of the overall diagnostic record."[90]

In addition to the ALJ having taken the medical records from Recovery and Wellness Center of Eastern Washington out of context, the ALJ erred in finding that the medical record was limited.  It is clear from the summary reports that several hundred pages of progress notes and treatment records exist but are not a part of the record. Plaintiff attended treatment 5 days a week for a period of 10 months. If one were to assume that each individual and group therapy had even one single page of treatment notes that would indicate more than 200 pages of records.

---

[90] *Ghanim*, 763 F.3d at 1164.

DISPOSITIVE ORDER - 28

"The ALJ always has a special duty to fully and fairly develop the record" to make a fair determination as to disability, even where, as here, "the claimant is represented by counsel."[91] This "affirmative responsibility to develop the record" is necessary to ensure that the ALJ's decision is based on substantial evidence.[92]

On this record, the Court concludes that the ALJ erred by failing to develop the record as to known treatment notes that were not obtained and then compounded that error by citing to a limited record as a reason for discrediting supportive medical opinion evidence. The Court concludes that remand is warranted for the ALJ to properly develop the record.

---

[91] *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (cleaned up).

[92] *Id.* at 1184.

5. <u>Summary</u>

Because the ALJ did not give good reasons for her evaluation of Dr. Long's opinions, a remand is warranted. On remand, the ALJ is directed to properly consider the medical evidence and to develop the record further by requesting the full medical record rather than a limited abstract of records regarding Plaintiff's partial hospitalization.

**B. Step-Five Findings and Formulated RFC: The Court finds these issues moot.**

Plaintiff argues the ALJ failed to properly assess her mental and physical limitations. As discussed above, the ALJ failed to develop the record. Because the Court has remanded the case for development of the record, the ALJ is further directed to schedule a consultative examination to determine Plaintiff's physical limitations, or to call a medical expert to testify regarding the issue, and thereafter to formulate an RFC based on those findings and to make findings at Step Five.

**C. Remand for Further Proceedings**

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or

simply to award benefits, is within the discretion of the court."[93] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[94]

The Court finds that further development of the record is necessary for a proper disability determination. The ALJ should obtain missing records, schedule a consultative examination regarding Plaintiff's physical impairments, schedule medical expert testimony if necessary, properly consider the opinion evidence and testimony, and make findings at each of the five steps of the sequential evaluation process.

---

[93] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[94] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke* 379 F.3d at 595 ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

## IV.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 14 and 17**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 24th day of March, 2026.

_Edward F. Shea_

EDWARD F. SHEA
Senior United States District Judge